# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

Streetspace, Inc.                )
                              )

v.                            )
                              )

Google, Inc.                  )      Appeal No. 2016-2115
                              )

Re-examination No. 95/001,763  )
Filed: September 15, 2001       )
For:   Method and System for Providing   )
       Personalized Online Services and   )
       Advertisements in Public Space   )

## NOTICE FORWARDING CERTIFIED LIST

A Notice of Appeal to the United States Court of Appeals for the Federal Circuit was timely filed on May 20, 2016, in the United States Patent and Trademark Office in connection with the above-identified *Inter partes reexamination* proceedings. Under 35 U.S.C. § 143 and Fed. Cir. R. 17(b)(1), a Certified List is being forwarded to this Court.

A copy of the Certified List is also this day being forwarded to Appellant in an enveloped addressed as follows:

> James V. Fazio, III.
> Trevor Q. Coddington, Ph.D.
> David M. Beckwith
> SAN DIEGO IP LAW GROUP LLP
> 12526 High Bluff Drive #300
> San Diego, CA 92130

In addition, a copy of the Certified List is this day being forwarded to the third-party re-examination requestor addressed as follows:

> Michael T. Hawkins
> Fish & Richardson, P.C.
> Hawkins@fr.com

If copies of the Notice of Appeal and the filing fee of $500.00 have not been filed with this Court, Appellant is reminded that copies of the notice and filing fee should be promptly filed with this Court. The mailing address of this Court is:

> US Court of Appeals for the
> Federal Circuit
> 717 Madison Place, NW
> Washington, DC 20439

All papers to be served on the Solicitor in connection with this appeal shall be delivered as follows:

By hand to:

> Office of the Solicitor
> Madison West
> 600 Dulany Street, Room 08C43A
> Alexandria, VA

By mail to:

> Office of the Solicitor
> Mail Stop 8
> PO Box 1450
> Alexandria, VA 22313

Respectfully submitted,

Michelle K. Lee
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

Date: July 6, 2016        By    *Tawana A. Hawkins*
Tawana A. Hawkins
Paralegal Specialist
Office of the Solicitor
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313

571-272-9035

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing has been served on counsel for Appellant and Apellee this 6th day of July 2016 as follows:

### Appellant

James V. Fazio, III.
Trevor Q. Coddington, Ph.D.
David M. Beckwith
SAN DIEGO IP LAW GROUP LLP
12526 High Bluff Drive #300
San Diego, CA  92130

### Third-Party Requester

Michael T. Hawkins
Fish & Richardson, P.C.
Hawkins@fr.com

By: *Tawana A. Hawkins*
Tawana A. Hawkins
Paralegal Specialist

## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

July 6, 2016

(Date)

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the Patent Trial and Appeal Board (PTAB) for the Reexamination *Review* proceeding identified below.

### STREETSPACE, INC.
#### Patent Owner,

v.

#### GOOGLE, INC.
#### Petitioner.

**Appeal 2015-008002**
**Reexamination Control 95/001,763**
**Patent 6,847,969**

By authority of the

### DIRECTOR OF THE UNITED STATES
### PATENT AND TRADEMARK OFFICE

*Certifying Officer*



**PROSECUTION HISTORY OF REEXAMINATION NO. 95/001,763**
**STREETSPACE, INC. v. GOOGLE, INC.**

| DATE | DOCUMENT |
|---|---|
| 09/15/2011 | Application |
| 09/30/2011 | Transmittal of Communication to Third Party Requester and Patent Assignment Abstract of Title |
| 10/13/2011 | Response to Notice of Noncompliance Mailed on September 30, 2011 |
| 10/17/2011 | Power of Attorney, Statement under 37 C.F.R. 3.73(b) and BIB |
| 10/20/2011 | Notice of Assignment of *Inter Partes* Reexamination Request and Notice of *Inter Partes* Reexamination Request Filing Date |
| 10/21/2011 | Notice of Acceptance of Power of Attorney and Notice Regarding Change of Power of Attorney |
| 10/26/2011 | Litigation Search Report |
| 11/01/2011 | Returned Mail |
| 11/21/2011 | Granting Request for *Inter Partes* Reexamination and Office Action |
| 12/08/2011 | Notice of *Inter Partes* Reexamination Request Filing Date and Notice of Assignment of *Inter Partes* Reexamination Request |
| 01/23/2012 | Information Disclosure Statement (IDS) and Non-Patent Literature |
| 01/24/2012 | Miscellaneous Communication |
| 01/27/2012 | Declaration of Trevor Coddington |
| 02/22/2012 | Third Party Comments and Petition |
| 02/24/2012 | Artifact Sheet |
| 05/01/2012 | Decision Granting Petition |
| 06/04/2012 | Action Closing Prosecution |
| 06/11/2012 | Patent Owner's Petition for Extension of Time |
| 06/21/2012 | Decision on Petition for Extension of Time in Reexamination |
| 08/06/2012 | Declaration of Expert and One of Ordinary Skill in the Art Dr. Fouad Tobagl |
| 08/27/2012 | Notice Re: Detective Paper In *Inter Partes* Reexamination |
| 09/25/23012 | Reply to Action Closing Prosecution (ACP) and Notice Re: Defective Paper In *Inter Partes* Reexamination |
| 10/25/2012 | Petition to Wave the 50-Page Limit Set Forth and Third Party Comments, Second Declaration of Dr. Amin-Hammad and Declaration of Andrew Schulz |

**PROSECUTION HISTORY OF REEXAMINATION NO. 95/001,763**
**STREETSPACE, INC. v. GOOGLE, INC.**

| | |
|---|---|
| 01/16/2013 | Litigation Search Report |
| 02/20/2013 | Decision Granting Petition |
| 03/05/2013 | Notification of Existence of Canadian Intellectual Property Office Proceeding and Decision Thereon and Non Patent Literature |
| 05/10/2013 | Transmittal of Communication to Third Party Requester and Right of Appeal Notice |
| 06/10/2013 | Notice of Appeal |
| 06/24/2013 | Notice of Cross Appeal |
| 08/12/2013 | Amendment to Claims After Filing of Appeal and Petition Requesting Continued Reexamination and Miscellaneous Communication and Patent Owner's Appeal Briefs |
| 08/16/2013 | Artifact |
| 08/26/2013 | Third Party Requester's Cross Appeal Brief |
| 09/12/2013 | Third Party Requester's Respondent Brief |
| 09/26/2013 | Patent Owner's Brief in Response to Third Party Requester's Cross Appeal |
| 11/20/2013 | Decision – Dismissing Petition |
| 01/29/2014 | Notification re: Brief |
| 02/11/2014 | Electronic Acknowledgement Receipt |
| 02/28/2014 | Reply to *Inter Partes* Reexamination Notification Re: Brief |
| 09/10/2014 | Transmittal of Communication to Third Party Requester |
| 11/11/2014 | Resubmission of Amendment to Claims After Filing of Appeal |
| 04/09/2015 | Litigation Search Report |
| 04/23/2015 | Examiner's Answer |
| 05/26/2015 | Third Party Requester's Rebuttal Brief |
| 06/23/2015 | Request for Oral Hearing |
| 06/26/2015 | Transmittal of Communication to Third Party Requester |
| 09/11/2015 | Docketing Notice |
| 01/12/2016 | Notice of Hearing |
| 02/01/2016 | Notice of Hearing |
| 02/02/2016 | Correspondence Re: Oral Argument |
| 03/22/2016 | Decision on Appeal - Affirmed |
| 03/23/2016 | Hearing Held March 2, 2016 |
| 05/20/2016 | Notice of Appeal |

## United States Court of Appeals for the Federal Circuit

STREETSPACE, INC., Appellant,

v.                          NOTICE OF APPEAL

GOOGLE, INC., Appellee.


STREETSPACE, INC. hereby appeals the court for review of the Decision on Appeal 2015-008002, Reexamination Control 95/001 763, Patent 6,847,969 B1, of the United States Patent and Trademark Office before the Patent Trial and Appeal Board entered on March 22, 2016.

Dated: May 20, 2016

James V. Fazio, III
Trevor Q. Coddington, Ph.D.
David M. Beckwith
SAN DIEGO IP LAW GROUP LLP
12526 High Bluff Drive #300
San Diego, CA 92130
Tel. (858) 792-3446
jamesfazio@sandiegoiplaw.com
trevorcoddington@sandiegoiplaw.com
davidbeckwith@sandiegoiplaw.com

## CERTIFICATE OF SERVICE

I, James V. Fazio, III, hereby certify that on May 20, 2016, a copy of the foregoing Notice of Appeal was served as follows:

**Michael T. Hawkins**
Fish & Richardson P.C.
Email: Hawkins@fr.com
Counsel for third party requester



James V. Fazio, III

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,763 | 09/15/2011 | 6,847,969 B1 | SS-1-REEXAM | 6195 |

87045        7590        03/22/2016
San Diego IP Law Group LLP
attn: Trevor Coddington, Esq.
12526 High Bluff Drive
Suite 300
San Diego, CA 92130

| EXAMINER |
|---|
| WASSUM, LUKE S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/22/2016 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

GOOGLE, INC.
Requester

v.

STREETSPACE, INC.
Patent Owner and Appellant

————————

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1
Technology Center 3900

————————

Before JAMES T. MOORE, MARC S. HOFF, and DAVID M. KOHUT, *Administrative Patent Judges.*

MOORE, *Administrative Patent Judge.*

DECISION ON APPEAL

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

## I. BACKGROUND

Patent Owner Streetspace, Inc. ("Patent Owner") appealed under 35 U.S.C. §§ 134(b) and 315(a) (pre-AIA) the Examiner's final decision to reject claims 6, 17, 23–40, 42–58, and 60–69.[1] Third-Party Requester Google, Inc. (hereinafter "Requester") urges that the Examiner's decision to reject must be affirmed.[2] Requester further appeals under 35 U.S.C. §§ 134(c) and 315(b) (pre-AIA) the Examiner's decision not to adopt certain rejections of claims 6, 17, and 23.[3] Patent Owner opposes that request for relief. We have jurisdiction under 35 U.S.C. §§ 134(b), (c) and 315(a), (b) (pre-AIA).

We affirm the Examiner's decision to reject claims 6, 17, 23–40, 42–58, and 60–69. We also affirm the Examiner's decision not to adopt the rejection of claims 6, 17, and 23 over certain prior art.

## II. STATEMENT OF THE CASE

United States Patent 6,847,969 B1 (hereinafter the "'969 Patent"), which is the subject of the current *inter partes* reexamination, issued to Tom J. Mathai and Kenneth Margon on January 25, 2005 from Application

---

[1] *See* Patent Owner's Appeal Brief 1 (filed February 28, 2014) (hereinafter "PO App. Br."); Patent Owner's Rebuttal Brief (filed May 26, 2015) (hereinafter "PO Reb. Br."); Examiner's Answer (mailed April 23, 2015) (hereinafter "Ans."); Right of Appeal Notice (mailed May 10, 2013) (hereinafter "RAN."). An amendment was entered November 11, 2014 canceling claims 1–5; 7–16, 18–22, 41, and 59.

[2] *See* Requester's Respondent Brief (filed September 12, 2013) (hereinafter "Req. Resp't Br.").

[3] *See* Requester's Appeal Brief 4–5 (filed August 26, 2013) (hereinafter "Req. App. Br."); Requester's Rebuttal Brief (filed May 26, 2015) (hereinafter "Req. Reb. Br."); Patent Owner's Respondent Brief (filed September 26, 2013) (hereinafter "PO Resp't Br.").

2

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

09/959,654, filed as a PCT Application May 3, 2000. The '969 Patent

claims priority to provisional applications 60/132,168, filed May 3, 1999 and

60/160,760, filed October 21, 1999.

The '969 Patent is the subject of litigation styled *Streetspace, Inc. v.*

*Google, Inc.*, Case No. 3:11-cv-04574 (N.D. Cal.). It appears that this civil

action remains stayed pending the outcome of this reexamination

proceeding. *See, e.g.*, Case 3:11-CV-04574-WHA, Document 161, Filed

11/30/15.

We heard oral arguments from Patent Owner and Requester on March

3, 2016, a transcript of which will be entered into the record in due course

("Tr.").[4]

The '969 Patent relates to providing personalized online services for

transactions and communications in public spaces and private spaces.

(Abstract).

Claim 6, which is illustrative of the appealed subject matter, reads as

follows:

> 6. A system, comprising:
>     a terminal, wherein said terminal has an identification
> code for determining an exact physical location of said
> terminal;
>     a database having a profile for a user, wherein said
> database includes usage history information for said user, said
> usage history information comprises information selected from
> the group consisting of demographic information, personal
> interest information, behavior-tracking information, responses
> to other advertising content, locations of terminals used by the
> user, and the time at which the user uses the system;

---

[4] Pursuant to 37 C.F.R. § 41.73(e)(1), the arguments considered in rendering
this decision are those which were relied upon in the briefs.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> a program for displaying personalized information on said terminal, wherein said personalized information is selected for display based upon said profile; and
> wherein the system records the time said user logs on to and logs off of the system, and
> wherein said personalized information is also selected for display based upon the time said user logs on to the system.

PO App. Br., Claims App'x.

Appellant Patent Owner asserts that the claimed subject matter was embodied in multiple terminals which were deployed as kiosks terminals in Berkeley, California in October, 1999. PO App. Br. 6. To give a sense of the kiosk, we reproduce a figure of one below from Appellant Patent Owner's Brief.



A photographic illustration of a kiosk

The kiosk is said to have provided a "streetspace" access to the internet, e-mail, conversation, and other functionality. PO App. Br. 7.

### III. Issues on Appeal

*Patent Owner's Appeal*

Appellant Patent Owner contests the Examiner's decision to reject the claims as follows:

4

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> 1. The rejection of claims 6, 17, and 23 under 35 U.S.C.
> § 103(a), over U.S. Patent No. 6,609,102 B2, issued Aug.
> 19, 2003 to Kolls ("Kolls"), U.S. Patent No. 6,078,928,
> issued June 20, 2000 to Schnase et al. ("Schnase"), and
> U.S. Patent No. 6,334,110 B1, issued Dec. 25, 2001 to
> Walter et al. ("Walter").

> 2. The rejection of claims 24–26, 42–44, 60, and 61
> under 35 U.S.C. § 103(a) over Nokia 9000i
> Communicator User Manual ("Nokia"), U.S. Patent No.
> 6,047,327, issued Apr. 4, 2000 to Tso et al. ("Tso"), and
> Internet in a Nutshell by Quercia ("Quercia").

> 3. The rejection of claims 27, 28, 45, and 46 under
> 35 U.S.C. § 103(a) over Nokia in view of Tso, Quercia,
> and Deja News - Trademark, Disclaimer, and Our
> Position on Usenet Privacy ("Deja News").

> 4. The rejection of claims 29–34, 37–40, 47–52, and 55–
> 58 under 35 U.S.C. § 103(a) over Nokia, Tso, Quercia,
> Deja News, and Internet After Hours by Eddy ("Eddy").

> 5. The rejection of claims 35, 36, 53, and 54 under
> 35 U.S.C. § 103(a) over Nokia, Tso, Quercia, Deja News,
> Eddy, and U.S. Patent No. 5,983,073, issued Nov. 9,
> 1999 to Ditzik ("Ditzik").

> 6. The rejection of claims 62 and 63 under 35 U.S.C.
> § 103(a) over Nokia, Tso, Quercia, and U.S. Patent No.
> 5,848,396, issued Dec. 8, 1998 to Gerace ("Gerace").

> 7. The rejection of claims 64–69 under 35 U.S.C.
> § 103(a) over Nokia, Tso, Quercia, and Eddy.

> 8. The rejection of claims 24–69 under 35 U.S.C. § 112
> ¶ 2.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

     9.  The rejection of claims 45–47, 49, 50, and 56 under
     35 U.S.C. § 112 ¶ 4.

PO App. Br. 4.

*Requester's Appeal*

Requester contests the Examiner's final decision not to reject the claims as follows:

    A.    The nonadoption of the rejections of claims 6, 17, and 23 as obvious over Beach in view of Gerace.

    B.    The nonadoption of the rejections of claims 6, 17, and 23 as obvious over Beach in view of Ogasawara and Gerace.

    C.    The withdrawal of the rejections of claims 6 and 23 as obvious over Gupta 1 in view of Tso 2.

    D.    The withdrawal of the rejection of claim 23 as anticipated by Tso.

    E.    The withdrawal of the rejections of claims 6 and 17 as anticipated by Gupta 2.

Req. App. Br. 4–5.

Patent Owner additionally relies on the following as evidence:

Appellant Patent Owner Exhibit 1- video originally aired on ZDTV's Internet Tonight on February 4, 2000, discussing the Streetspace terminals in Berkeley, California. Entered into the record via the Declaration of Trevor Coddington under 37 C.F.R. § 1.132 on January 23, 2012.

Appellant Patent Owner Exhibit 2 - Google History (available at http://www.google.com/about/corporate/company/history.html). Entered into the record via the Declaration of Trevor Coddington under 37 C.F.R. § 1.132 on January 23, 2012.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

Appellant Patent Owner Exhibit 3 - E. Baird, "Targeted Online Advertising: Persuasion in an era of massless communication," M.I.T., June 2008. Entered into the record via the Declaration of Trevor Coddington under 37 C.F.R. § 1.132 on January 23, 2012.

Appellant Patent Owner Exhibit 4 - Declaration of Dr. Amin Hammad under 37 C.F.R. § 1.132. Entered into the record on February 22, 2012.

Appellant Patent Owner Exhibit 5 - Declaration of Dr. Fouad Tobagi under 37 C.F.R. § 1.132. Entered into the record on August 6, 2012.

Appellant Patent Owner Exhibit 6 - Declaration of Thomas J. Mathai under 37 C.F.R. § 1.132. Entered into the record on August 6, 2012.

Appellant Requester additionally relies on the following as evidence:

First declaration of Dr. Amin Hammad, which was submitted with the February 22, 2012 Third Party Comments (and considered in the ACP at pp. 7–8).

Declaration of Andrew Schulz, which was submitted with the October 25, 2012 Third Party Comments (and considered in the RAN at p. 4).

Second Declaration of Dr. Amin Hammad, which was submitted with the October 25, 2012 Third Party Comments (and considered in the RAN at p. 4).

## IV. PATENT OWNER'S APPEAL

### A. Obviousness Rejections

1. The rejection of claims 6, 17, and 23 under 35 U.S.C. § 103(a), over U.S. Patent No. 6,609,102 to Kolls ("Kolls"), U.S. Patent No. 6,078,928 to Schnase et al. ("Schnase"), and U.S. Patent No. 6,334,110 to Walter et al. ("Walter").[5]

---

[5] Appellant Patent Owner has not challenged the prior art status of these references.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

This rejection was adopted from the Request, pages 30–54. RAN 32–33. In overview, Kolls describes a system and method for a universal control and payment system to distribute and display interactive advertising, conduct electronic commerce, and control the billing for the use of vending equipment. Vending equipment included copiers, phones, facsimile machines, printers, data-ports, laptop print stations, notebook computers, palmtop computers, microfiche devices, projectors, scanners, cameras, modems, communication access, personal computers, personal computer terminals, and network computers. Kolls 3:39–49.

The system of Kolls is said to provide public access to electronic commerce by controlling, monitoring, and effectuating electronic commerce transactions such that the general public can have a publicly accessible electronic commerce station. *Id.* at 50–55.

Schnase describes information storage and retrieval systems that allow users to selectively capture their interests and retrieve information at particular sites based on their particular interests and desires, and which provide for the ability to analyze users' interests and desires. Schnase 1:5–10.

Walter describes analyzing customer behaviors based on the time when those behaviors occur. Information about customer interactions and transactions is captured over time, customers are classified into one or more clusters based on their time-based interactions and transactions, or both, and this classification is used to perform selected target marketing or cross-selling. Walter 1:37–43.

8

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

In rejecting claim 6 (which is a combination of original claims 1 and 6) the Examiner found that Kolls describes a stationary terminal in the form of a public access kiosk that serves as a vending machine type of equipment from which services can be rendered. Kolls further was found to describe the fixed public terminals can be in the form of a well-equipped computer system. Kolls includes a database having a profile for a user and usage history information is recorded by the system. Marketing advertisements can be provided in accordance with a customer profile. Request 11–13. Marketing can be targeted using location and time. *Id.* at 14. A user can be paged when in proximity to the terminal. *Id.*

Kolls' system was found to enable and disable the vending equipment at times recorded by the system. This was in response to customer identification authorization by way of a smart card, debit card, credit card, or other identification means. Request 17.

The Examiner additionally found that Walter describes that personalized information is selected for display based upon the time the user logs on to the system. Request 17–18.

The Examiner then concluded that one of ordinary skill in the art would have been prompted to modify Kolls to display time based on personalized information in order to suggest products to be replenished, given the history of the user. Request 18.

Schnase was found to describe visitors to an institution having exhibits, and that a location identifier was known in public terminal systems. Each exhibit can include a "smart card terminal" where a visitor to the institution can insert a portable information storage device into a slot on the

9

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

smart card terminal designed to accept the portable information storage device. This downloads an exhibit index, uniquely assigned to that particular exhibit sign, and would preferably include a location identifier. Request 31, citing Schnase 7:7–12.

The Examiner then concluded that one having ordinary skill in the art would have been prompted to modify the Kolls system to have an identification code for determining an exact physical location of the terminal (as taught by Schnase) in order to provide an identification code for determining the terminal's current location. Request 31, citing Kolls 12:52–56. Further, the Examiner found Schnase describes the use of the location of terminals to target content for display to a user. *Id.* citing Schnase 11:31–34 and 12:4–9. Lastly, the Examiner concluded that a skilled artisan would have been prompted to incorporate this particular feature from the Schnase disclosure to the Kolls system because to do so would be merely a use of a known technique to improve similar devices. Request 31–32.

*Is Schnase Analogous Art?*

Appellant Patent Owner urges that Schnase is nonanalogous art. PO App. Br. 13. Appellant Patent Owner urges that the field of endeavor is real-time engagement of users for business purposes in an area transcending the facility hosting the terminal. *Id.* Appellant Patent Owner also urges that the problem faced by the inventor is providing users with integrated online services in public spaces in real-time on the street. *Id.* at 13–14.

We disagree with this argument. The best evidence presently of record is found within the Specification itself. The '969 Patent recites that the field of the invention is "methods and systems for providing online

10

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

services, and more particularly, to methods and systems for providing
personalized and integrated online communications, information,
advertising, and commercial transactions in public spaces or venues." '969
Patent 1:10–16.

Schnase describes retrieving information based on particular interests
and desires (Schnase 1:8–9). Schnase describes its invention as being in
institutions and facilities which are "visited, toured, or otherwise used by
people" *id.* at 1:14–15. A visitor may access information "at a later point in
time at an informational kiosk, by telephone, by modem, or by a computer
having access to the institution's or facility's prescribed information
database via, by way of example, the Internet or similar means." *Id.* at 3:66–
3:3. Accordingly, we find Schnase is in the same field of endeavor.

Even if we were to accept that the field of endeavor should be
interpreted as "transcending the facility," we observe that Schnase also
describes that its system would

> preferably have various methods for conveying or delivering
> the requested information related to particular exhibits, displays
> or sites to visitors and would allow visitors to chronicle their
> interests and, at a later point in time, request or receive
> additional information regarding their particular interests as
> new information relating to their interests becomes available.

Schnase 2:55–62.

Insofar as the problem to be addressed by the inventor is defined by
the Appellant Patent Owner, even if we accept the Appellant Patent Owner's
position, Schnase describes solving a problem of gathering data about users
and providing information in public venues. Schnase 2:10–31.
Accordingly, we find that Schnase also logically commends itself to the

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

inventor in addressing the problem as put forth by the Appellant Patent
Owner.

We understand Appellant Patent Owner's argument that its claimed
invention is to provide users with a "street space" portal to send and receive
email, access information, and transact commerce in real-time.  PO App. Br.
14, citing '969 Patent 4:50–58.  We also understand that Schnase does not
perform some of those functions.  However, we agree with the Examiner's
finding that Schnase is nonetheless in the same field of endeavor and related
to the problem being addressed by the inventor.  Req. Resp't Br. 6–8,
adopted at Ex. Ans. 33.

> ### *Identification Code for Determining an Exact Physical Location*

Appellant Patent Owner next argues that Kolls fails to disclose the
claim requirement in claims 6, 17, and 23 that "said terminal has an
identification code for determining an exact physical location of said
terminal."  PO App. Br. 16.

According to the Specification, "[e]ach terminal has a unique
identification code that allows the system to determine the exact physical
location of the user each time he or she uses the system."  '969 Patent 5:4–7.
While the Specification does not define "exact" it would seem that the
Examiner made a reasonably broad interpretation of exact, i.e., close enough
to use the directions function to and from the terminal.  RAN 13–14, citing
Tobagi Decl. ¶ 6.

According to Appellant Patent Owner, Kolls never discloses using an
identification code to determine its location and only states that "'relevant

12

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

marketing data'" and "'advertisements'" can be displayed on the system.
PO App. Br. 16, citing Kolls 21: 50–52.

The Examiner found that Kolls utilizes terminals having unique IDs,
location, and location codes, but does not specifically mention an
identification code for an *exact physical position of a terminal*. Ex. Ans.
28–30; *see, e.g.*, Kolls 21:52–57: "Relevant marketing data can include
current date and time, *location*, total sale amount, and where appropriate
total copies, faxed pages, time used, PC usage, online usage, electronic
commerce charges, total prints and other relevant marketing data." *See also*
28:11–15 which states "[a]dditional PRE-VEND transaction data can
include network traffic codes, authorizing sale amounts, system **500**
configuration parameters, database access codes, *remote location codes*,
currency codes, terminal codes, and other routing and system operational
codes." (Emphasis added).

However, the Examiner also found that Schnase describes a location
identifier for exhibits. *See* Schnase 6:22–38.

> Alternatively, the content database may preferably be indexed
> using a plurality of exhibit indexes, wherein each exhibit index
> is associated with a particular location (e.g., an exhibit sign)
> and includes a location identifier identifying the location
> (within the institution) of the exhibit on display and a temporal
> identifier identifying the time period that the exhibit was
> displayed at that particular location. The exhibit index is
> preferably designed to account for situations whereby a visitor
> may store his interests in particular exhibits at one point in
> time, but not be required to attempt to request or retrieve
> information related to that exhibit until a later point in time. In
> the intervening time period, the exhibit on display may have
> been modified, relocated or removed from the institution
> altogether. Of course, if the particular exhibit is designed for

13

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> permanent installation, the exhibit index may only consist of
> the particular location of the exhibit.

> Further:

> It should be noted that, as will be understood by those skilled in
> the art, the location identifier (or other identifier) can preferably
> consist of any number of possible means for recording the
> location or site, including, for example, a unique identifier for
> an exhibit sign whose physical location is known. Alternatively,
> the location identifier can consist of a latitude, longitude, and
> possibly an altitude as might be recorded by a global
> positioning system, or other available methods. In a preferred
> implementation, the content database would be updated through
> reapplication of the method shown in FIG. **2** with a "no delete"
> policy so that an historical record of exhibit information would
> be maintained.

Schnase 7:7–19.

Appellant Patent Owner contends that, "[a]t best, Schnase teaches an
exhibit sign identification code and a location identifier for an exhibit sign
and therefore, the combination of Schnase and Kolls does not teach the
invention of claims 6, 17, and 23." PO App. Br. 18.

We disagree with Appellant Patent Owner's interpretation of Schnase.
Schnase places a sign at a known location adjacent and associated with
particular sites, items, or exhibits. Schnase then provides that "[e]ach
exhibit sign **2** preferably includes a communication terminal, such as smart
card terminal **5** capable of communicating with the portable information
storage device **1**." Schnase 7:30–33. Accordingly, we see no error in the
Examiner's finding that the combination of Schnase and Kolls describes an
identification code for the exact location of a sign, including a terminal.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

*User Profile and Displaying Personalized Information*

Appellant Patent Owner next urges that Kolls does not teach or suggest a profile for a user in the sense of personalized information display. According to Appellant Patent Owner, Kolls' reference to a user's established profile refers to configuration preferences of a personal computer. PO App. Br. 19, citing Kolls 26:9–12. This is not, argues Appellant Patent Owner, "'displaying personalized information . . . based upon said profile.'" PO App. Br. 19. Essentially, Appellant Patent Owner urges that the preferred machine profile cannot be equated to the user profile.

While it is not in dispute that Kolls not only describes a profile for configuring a computer, this argument overlooks the embodiment of Kolls which Examiner also found that the profile of the user can be established in order to target advertising at the user. Ex. Ans. 31–33.

As stated in Kolls:

> A DII [dynamic identification interchange] processing step can determine the status of the user (number of previous visits, preferences) and prompt the user to answer customer survey questions. DII processing can route transaction information and customer survey responses to any desired location or database. Additionally, through DII processing, accounts can be established to allow an electronic commerce transaction to occur. Such accounts can include customer identification, customer purchasing history, customer credit limits, other customer information, electronic commerce accounts, payment accounts, shipping accounts, local franchise store locations, local in-store customer account information and other related account detail.

Kolls 26:19–31.

15

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> In addition to the processing disclosed in transaction routine
> **900**, the DII can select advertising and other marketing
> advertisements from a database (remote database or local
> database). The selection of marketing advertisements can be
> random or in accordance with a customer profile (individual or
> by group type). Customer profile parameters can be accessible
> by the universal server and/or by way of DII process steps.

Kolls 32:22–29.

The evidence of record thus supports the Examiner's finding. We
therefore are unpersuaded of error by this argument.

*Personalized Information Selected for Display Based on Said Profile*

Appellant Patent Owner next urges that Kolls does not describe a
customer profile stored in a database or associated with a user of the system,
or what information is stored in a profile. PO App. Br. 19.

However, as noted above, Kolls does describe a customer profile, and
exemplary information is described. Accordingly, we are unpersuaded of
error in this regard.

*Dissimilarity of Schnase and Kolls*

Appellant Patent Owner next urges that the Examiner erred in
concluding a person of ordinary skill in the art would not have been
prompted to incorporate Schnase into Kolls because the two devices are
dissimilar. PO App. Br. 20. Among the dissimilarities noted are internet
connectivity, disconnect between the terminals where information is
obtained, and location change affecting the information if the terminals are
moved. *Id.* While there may exist some differences between the references
in their execution, we do not see any persuasive evidence to support the
argument that these differences would prevent one of skill in the art from

16

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

recognizing that an exact location could be given by a unique location identifier for the sign (and included terminal) as described by the combination of Kolls and Schnase, discussed above.

Accordingly, we are unpersuaded of error by this argument.

II. The rejection of claims 24–26, 42–44, 60, and 61 under 35 U.S.C. § 103(a) over Nokia, Tso, and Quercia.

Claim 24 reads as follows:

24. A system for providing users with personalized and integrated online services for communications and commercial transactions both in private and public spaces, comprising:

a terminal, wherein said terminal has an identification code for determining an exact physical location of said terminal;

a database having a profile for a user, wherein said database includes usage history information for said user, said usage history information comprises information selected from the group consisting of demographic information, personal interest information, behavior-tracking information, responses to other advertising content, locations of terminals used by the user, and the time at which the user uses the system;

a program for displaying personalized information on said terminal, wherein said personalized information is selected for display based upon said profile;

wherein said terminal is connected to the Internet and provides said user with a street space in which personalized online services are conveniently accessible to said user, said terminal further comprising:

a first program for permitting said user to send and receive email messages at said terminal;

17

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> a second program for permitting said user to identify a
> business located in a local area of said terminal and to display
> directions to said identified business; and

> a third program for permitting said user to transact
> commerce via the Internet.

The Examiner adopted the Requester's proposed rejection from a
February 22, 2012 submission at pages 72–114. RAN 47.

Nokia is the owner's manual for a smartphone with multiple features.
The Examiner, by adoption, has found that Nokia describes a mobile phone,
messaging device, access terminal and a palmtop organizer in one compact
package. Feb 22, 2012 Submission 73. Tso was relied upon for the
description of sending SMS messages based upon the GPS location of the
device. *Id.* at 74. The Examiner concluded that it would have been obvious
to have an identification code for determining an exact physical location of
said terminal (as taught by Tso) in order to provide Nokia's terminal with
Tso's targeted advertising benefits. *Id.*, citing Hammad Decl. ¶ 32.

Quercia was found to describe a browser program which permits web
browsing, maps and directions, and search engines. Feb. 22, 2012
Submission 77. The Examiner concluded it would have been obvious to use
the Nokia web browser, as taught by Quercia, to access online pages to find
and get directions to a local business. *Id.* Quercia is also relied upon for
describing the transaction of business in the same manner. *Id.* at 78.

Appellant Patent Owner argues that the Examiner has failed to
establish a prima facie case of obviousness in that Nokia, either taken alone
or in combination with Tso and Quercia, fails to teach or suggest "'wherein
said terminal has an identification code for determining an exact physical

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

location of said terminal.'" PO App. Br. 21.  According to Appellant Patent

Owner, Nokia never discloses using an identification code to determine a

terminal's location because the Nokia 9000i cannot determine its location.

*Id.*

      Appellant Patent Owner urges that Tso fails to cure this deficiency.

Tso 16:28–32 is relied upon for the description of the "exact physical

location of said terminal." PO App. Br. 21–22, citing Request 75.  It is

argued that Tso provides no degree of specificity as to how accurately the

location is determined and the Examiner has erred in concluding that Tso

teaches this claimed limitation.  Tso is said to describe two different options

for determining a location of a terminal; cellular level location information

and GPS, neither of which are said to have a degree of specificity.  PO App.

Br. 21–22, citing Tso 16:24–32 and Hammad Decl. ¶ 9, which cites Tso

16:44–60.

      We are unpersuaded by this argument.  Appellant Patent Owner has

challenged the GPS systems of 1999, asserting inaccuracy to the degree of

hundreds of meters.  PO App. Br. 23.

      We do accept that there must be some degree of inaccuracy in a GPS

system.  Requester has provided contemporaneous evidence that the degree

of accuracy in 1998 of GPS was sufficient to obtain directions or meet

someone, in accord with Appellant Patent Owner's definition of exact. *See,

e.g.*, Requester's October 25, 2012 response, Appendix X, page 2, where the

Garmin® Navtalk® is described and it is recited: "Position Accuracy: 1-5

(3-15 ft) meters with DGPS corrections, 15 meters (49 ft) RMS."

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

As a consequence, the evidence of record supports the
Examiner's finding, and we remain unpersuaded of error in this
regard.

>    3. The rejection of claims 27, 28, 45, and 46 under
>    35 U.S.C. § 103(a) over Nokia in view of Tso, Quercia,
>    and Deja News - Trademark, Disclaimer, and Our
>    Position on Usenet Privacy ("Deja News").

Appellant Patent Owner, although listing these claims PO App. Br.
23–24, has not made substantive separate argument. As a consequence, we
remain unpersuaded of error in this regard for the reasons stated above.

>    4. The rejection of claims 29–34, 37–40, 47–52, and 55–
>    58 under 35 U.S.C. § 103(a) over Nokia, Tso, Quercia,
>    Deja News, and Internet After Hours by Eddy ("Eddy").

Appellant Patent Owner, although listing these claims PO App. Br.
23–24, has not made substantive separate argument. As a consequence, we
remain unpersuaded of error in this regard for the reasons stated above.

>    5. The rejection of claims 35, 36, 53, and 54 under
>    35 U.S.C. § 103(a) over Nokia, Tso, Quercia, Deja News,
>    Eddy, and U.S. Patent No. 5,893,073 to Ditzik ("Ditzik").

The Appellant, although listing these claims PO App. Br. 23–24, has
not made substantive separate argument. As a consequence, we remain
unpersuaded of error in this regard for the reasons stated above.

>    6. The rejection of claims 62 and 63 under 35 U.S.C.
>    § 103(a) over Nokia, Tso, Quercia, and U.S. Patent No.
>    5,848,396 to Gerace ('Gerace').

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

Appellant Patent Owner, although listing these claims PO App. Br. 23–24, has not made substantive separate argument. As a consequence, we remain unpersuaded of error in this regard for the reasons stated above.

>    7. The rejection of claims 64–69 under 35 U.S.C.
>    § 103(a) over Nokia, Tso, Quercia, and Eddy.

Appellant Patent Owner, although listing these claims PO App. Br. 23–24, has not made substantive separate argument. As a consequence, we remain unpersuaded of error in this regard for the reasons stated above.

*Secondary Considerations*

In 1966, the Supreme Court in *Graham v. John Deere Co.*, 383 U.S.1, (1966) interpreted and applied section 103, stating:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*Id.* at 17–18.

The Federal Circuit has determined that only after considering the four Graham criteria together can the decision maker make the legal determination of whether the invention is nonobvious. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir.) *cert denied*, 481 U.S. 1052 (1987).

21

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

Appellant Patent Owner contends, *inter alia*, that the Examiner erred in fact finding because he failed to consider the evidence of record "established numerous and powerful secondary considerations that support a finding of nonobviousness." PO App. Br. 6.

*ZDTV*

The Examiner has determined that relying on a single 2.5 minute news story as a basis to conclude that the claimed invention is non-obvious is unwarranted. Ex. Ans. 19.

The evidence on this issue consists of a video produced by ZDTV in about 2000, fairly contemporaneously with the date the invention was made and shortly after a system was installed in Berkeley, California. ZDTV called the system "futuristic" and a user described the system as "really exciting." PO App. Br. 7 (emphasis omitted).

We have viewed the 2000 video. Enthusiasm for the system is apparent in both the announcer and some of the users. The system appears to have generated a certain "buzz" in the community and has supporters. However, we tend to agree with the Examiner and Requester Respondent that this praise, by users of a free system providing internet access and email accounts where they might not otherwise be available, weighs less on the side of patentability than, for example, praise from the industry or true competitors. Req. Resp't. Br. 2.

We also are left to wonder exactly what was being praised. Although Appellant Patent Owner asserts that it "implemented servers and associated databases to facilitate the users' use of the overall claimed invention (the 'Streetspace system'). Those same servers and databases facilitated the

22

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

delivery of personalized information and advertisements to users as claimed." PO App. Br. 7 (footnote omitted). However, we are not pointed to persuasive evidence that shows the Streetspace® system, as implemented, and when implemented, meets the specific claim limitations. We recognize that Appellant Patent Owner and its declarant Thomas J. Mathai, a cofounder of Streetspace® assert the conclusion that the system meets the claim limitations Mathai Decl. ¶ 5, 17–21. Paragraph 5 is conclusory, and paragraphs 17–20 cite to no evidence of record beyond the testimonial evidence itself, which is also conclusory, and it is unclear if the evidence is contemporaneous or referring to the 1999 installations.

Appellant Patent Owner, relying on testimony of Mr. Mathai states that "StreetSpace has garnered considerable laudatory press coverage for its innovative products and services in Yahoo! News, AOL News, FoxNews.com, the San Francisco Examiner, the San Jose Mercury News, ZDTV, Channel 4 News, and various retail trade magazines." Mathai Decl. ¶ 5; PO App. Br. 8. This evidence has some inherent weight towards patentability, but we are unable to locate objective evidence to support the statement within the record. Other than the Mathai testimony, no evidence of these publications or praise is cited to us. We therefore decline to give significant weight to the conclusion that the Streetspace® system is being "lauded" based solely upon the testimony of a cofounder of the Appellant about his interpretation of evidence which we could independently assess, if the evidence was before us.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

*Adoption by Others*

Appellant Patent Owner next urges that others adopted the invention.
PO App. Br. 9. We are told that some McDonald's® restaurants, Ben &
Jerry's®, Pac Bell® Park, Pittsburgh Port Authority, Pittsburgh Mayor's
Office, Tower Records®, AOL®, Hotmail®, ESPN®, MTV®, MSN Hotmail®,
WebMD®, Yahoo!®, CNN®, the 2002 Olympics, and Sony®, among others,
"adopted" the system. PO App. Br. 9–10. We accept that there may have
been terminals placed in these venues. But we are unable to give significant
weight to the position that these companies "adopted" the Streetspace®
system. For example, we observe that McDonald's® is principally in the
foodservice industry. Their permitting a company to locate terminals in a
location is not necessarily "adoption" by McDonald's®. At best, the
evidence that terminals were placed in locations, without more, establishes
that the terminals might be a convenience such as an automated teller
machine, restroom, or newspaper vending machine at the location. Req.
Resp't Br. 4.

*Users in Berkeley*

According to the Appellant Patent Owner, the Streetspace® system
registered 10,000 users in the first few weeks. PO App. Br. 10. It is asserted
that this level of growth illustrates commercial success and supports a
finding of nonobviousness. *Id.*

Respondent Requester takes the opposite viewpoint, that the rapid
registration followed by failure is a commercial failure. Respondent
Requester also urges that this rapid registration resulted from a free offering.
Req. Resp't. Br. 4–5.

24

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

We agree that this number is an indicator that the system received a number of registered users at the outset, which number may have been substantial when compared to Berkeley's population of approximately 100,000. We do give this initial aggressive adoption some weight towards patentability, as even a free offering requires a user to undertake some steps to register. The idea of providing connectivity in spaces where it has for the most part been previously unavailable was evidently an attractive idea.

However, we think the Respondent Requester's view, as adopted by the Examiner, carries more weight. Req. Resp't. Br. 4–5.

First, we do not see that a nexus has been established adequately. The conclusory and generic testimony of an interested witness that the kiosks met all the claim requirements is not persuasive to us. For example, Mr. Mathai testifies:

> The Web Station™ terminals and servers facilitating such featured in that video [the ZDTV video] embodied and still embody all of the patented technology and features claimed in the '969 patent and the above-captioned reexamination, including an intelligent advertising program that can display advertisements or other personalized content that are dynamically selected for display based on the terminal's location, a user's profile, web browsing history, logon time, and/or recorded usage of the terminal.

Mathai Decl. ¶ 5.

> Further:

> The terminals also offer marketers the ability to track and record consumers' use of the terminals and to deliver personalized online content to consumers based on their usage of the terminals, online behavior, profile and/or location. Within just a few weeks and with virtually no marketing,

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> StreetSpace had over 30,000 registered users—approximately
> one-third of the city's population. These users were using a
> system as claimed in the '969 patent and currently claimed in
> the above-captioned reexamination.

Mathai Decl. ¶ 4.

Claims 6 and 17 require personalized information to be selected for display "based upon the time said user logs on to the system." Claim 23 requires the use of the time the user logs into the terminal as part of the "selecting step." But the Examiner and Respondent Requester is correct in observing that the Mathai testimony is presented in the alternative "and/**or**" and does not directly state that personalized information was also selected for display based upon the time the user logs on to the system. Req. Resp't Br. 6.

Second, the Examiner was not persuaded by the overall financial success of Streetspace®. We have considered the arguments presented in Appellant Patent Owner's Appeal Brief, but find no error in the Examiner's conclusion that the results of less than a million dollars return on an investment of over six million dollars is not substantial evidence of commercial success. Req. Resp't Br. 5.

Accordingly, while we have reconsidered the rejections in view of the evidence of secondary considerations, we conclude that the evidence is insufficient to overcome the established prima facie case of obviousness.

B. Section 112 Rejections

8. The rejection of claims 24–69 under 35 U.S.C. § 112, ¶ 2.

26

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

Claims 24–69 stand rejected on various grounds under 35 U.S.C. § 112 ¶ 2. Claim 24 is representative of the issues on appeal, and reproduced below:

24. A system for providing users with personalized and integrated online services for communications and commercial transactions both in private and public spaces, comprising:

a terminal, wherein said terminal has an identification code for determining an exact physical location of said terminal;

a database having a profile for a user, wherein said database includes usage history information for said user, said usage history information comprises information selected from the group consisting of demographic information, personal interest information, behavior-tracking information, responses to other advertising content, locations of terminals used by the user, and the time at which the user uses the system;

a program for displaying personalized information on said terminal, wherein said personalized information is selected for display based upon said profile;

wherein said terminal is connected to the Internet and provides said user with a **street space** in which personalized online services are **conveniently accessible** to said user, said terminal further comprising:

a first **program** for permitting said user to send and receive email messages at said terminal;

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> a second **program** for permitting said user to identify a
> business located in a local area of said terminal and to
> display directions to said identified business; and

> a third **program** for permitting said user to transact
> commerce via the Internet.

PO App. Br. 32–33 (terms in question highlighted by bolding).

### *"Programs" – Claims 24–41 and 60–69*

New independent claims 24, 60, and 64 utilize the term "program for"
in conjunction with functional language, which places them within ambit of
the means-plus-function language of 35 U.S.C. § 112 ¶ 6. The Examiner has
found that insufficient structure is described within the Specification such
that the claims are indefinite. Ex. Ans. 39.

The Appellant asserts that the original claims contained this language
and the Respondent Requester failed to rebut the presumption of validity.
PO App. Br. 24. That position is without persuasive value, as reexamination
on original claims is restricted to prior art. 35 U.S.C. § 311(a)(2002). Such
issues cannot be raised and "rebutted."

Appellant Patent Owner next argues that the Specification explicitly
discloses the corresponding structure, material, or acts. Appellant Patent
Owner specifically urges that "program for" refers to software executing on
one or more computer processors, and describes the underlying hardware of
web servers and their interactions with ASP, HTML, Active-X and POP-3.
PO App. Br. 25–26.

The problem we observe with this position is that the Appellant Patent
Owner has used functional claim language that is not limited to any

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

particular structure or program. And while the Specification has identified some components and programming, we agree with the Examiner that one of ordinary skill in the art is unable to discern which types of programs would fall within the scope of the claims. For example, a web browser alone, a single program, could simultaneously be each of the first, second, and third or more programs. Accordingly, we see no error in the Examiner's determination that this type of generic functional claiming does not clearly define the programs claimed.

### *"Street Space"+"Conveniently Accessible"- Claims 24–59 and 64–69*

The Examiner has found that the term "'street space'" fails to provide clear notice of the metes and bounds of the claims. Ex. Ans. 41.

Appellant Patent Owner urges that term street space is used in the Specification and is clear. PO App. Br. 25. According to Appellant Patent Owner, the term means a "conveniently accessible space where users are able to send and receive email communications, and to access information and transact commerce via the internet." *Id.* at 26–27, citing '969 Patent 4:50–58.

While we understand the general thrust of the Appellant Patent Owner's explanation, "convenient" does little to clarify the term. What is convenient for one might not be convenient for another, the term is subjective, and consequently vague. Accordingly, we are not persuaded of error in this regard.

### *"Personal Information" – Claims 25, 43, and 60–69*

The Examiner has found that that the claims include the limitation that the profile for the user and the usage history information for the user

29

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

comprises personal information. As a result, the claims use the term "personal information" to further limit the claimed "user profile" and "usage history information." The Examiner has found that an ordinary artisan at the time of the invention would have understood a "user profile" and "usage history information" to be entirely made up of information personal to the user. The Examiner thus concludes that "personal information" is indefinite as it must be some subset of the profile or history, but nothing in the Specification defines what that subset might entail. Ex. Ans. 44.

Claim 25 reads as follows:

25. The system of claim 24, wherein said profile for said user and/or said usage history information for said user comprises personal information.

Appellant Patent Owner urges that the term personal information is in the '969 Patent. '969 Patent 7:56–63. Appellant Patent Owner also urges that the term is information that is personal to the user and therefore clear. PO App. Br. 28.

We agree with the Appellant Patent Owner on this point. A user profile can contain additional information that is not personal to the user. Consequently, we believe the term sufficiently definite to further limit the claim.

We therefore reverse this rejection as it applies to claims 25, 43, and 60–69. We note that these claims remain rejected on other grounds.

*"Privately Owned" – Claims 34–37, 52–55, and 66–69*

Claims 34, 52, and 66 include the limitation that the terminal is a privately-owned mobile communication device. The Examiner has observed that there is no way to determine whether a mobile communications device

30

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

issued by a government agency or corporation to an employee would qualify as "privately owned."[6]  The Examiner has also questioned why a "privately owned" mobile communication device would be functionally different from any other mobile communication device. Ex. Ans. 46.  Accordingly, the Examiner has concluded that these issues render the claims indefinite.

Appellant Patent Owner urges that "the Examiner has erred in concluding that the term 'privately owned' renders the claims indefinite" because it is used in the Specification.  Appellant Patent Owner urges that a privately owned mobile device refers to, for example, a mobile device that is owned by a store or bank, and can include any wireless mobile devices that are only accessible to their respective owners.  PO App. Br. 28, citing Tobagi Decl. ¶ 8.

We disagree.  Appellant Patent Owner's clarification by adding "accessibility" as a criterion exemplifies the Examiner's observation that one cannot tell the scope of this limitation.  One may "own" a device yet permit its continued use by another.  We therefore affirm this rejection.

*"Virtual Online Community of Users" – Claims 40, 58, and 67–69*

Claims 40, 58, and 67 recite the limitation that the system "supports a virtual online community of users."

Claim 40 is representative and reproduced below.

40.  The system of claim 39, wherein said system supports a virtual online community of users.

---

[6] We also wonder about government corporations, which have characteristics of both public and private entities.

31

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

The Examiner has found that "the specification provides various examples of functionality which *presumably* would support 'virtual online communities', it fails to provide an explicit definition of what functionality is <u>required</u> to 'support a virtual online community of users." The Examiner further finds that the Specification explicitly states that providing bulletin boards, chat sites, and city or municipality-based Internet sites does not itself create a "virtual community." Accordingly, the Examiner concludes these claims are indefinite. Ex. Ans. 48.

Appellant Patent Owner urges that "[t]he Examiner erred in concluding that the terms 'virtual community' or 'virtual online community of users' render the claims indefinite." Appellant Patent Owner states that "a 'virtual community' refers to the plurality of users of the claimed system" who are able to interact with one another using the system. PO App. Br. 29, citing Tobagi Decl. ¶ 3.

We are not persuaded by this position of the Appellant Patent Owner. A virtual "community" appears to require a certain minimum level of interaction between the users. As observed by the Examiner, the claim language does not make clear what level that interaction is. Accordingly, we affirm this rejection.

9. The rejection of claims 45–47, 49, 50, and 56 under 35 U.S.C. § 112 ¶ 4.

Claims 45–47, 49, 50, and 56 stand rejected under 35 U.S.C. § 112 ¶ 4 for being of improper form. RAN 30. According to the Examiner, the method steps "permitting said user to" suggests or makes optional, but does

32

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

not require. Ex. Ans. 49. As a result, the limitations fail to further limit the claims. *Id.*

Claim 45 is representative of this rejection, and reproduced below.

45. The method of claim 44, further comprising permitting said user to access a policy on protecting user privacy from said terminal.

Appellant Patent Owner urges that the Examiner has erred in concluding that the phrase "'permitting said user to'" renders the applicable steps as optional. Appellant Patent Owner asserts that "permitting" is an affirmative step, generally defined as "allowing" which is an affirmative step and not optional, requiring a computer server to decide whether a user is allowed to do a certain act or not. PO App. Br. 29. Appellant Patent Owner also states that it has removed the term permitting from claims 45–47, 49, 50, and 56. *Id.*

We find no error in the Examiner's position that the step of "permitting" renders the additional step one which is optional, as the underlying action may never be sought. Additionally, we are unable to find an entered amendment which accomplished this claim limitation's removal. Accordingly, we affirm this rejection.

## IV. REQUESTER'S APPEAL

### A. The nonadoption of the rejections of claims 6, 17, and 23 as obvious over Beach in view of Gerace.

The Examiner declined to adopt the rejection proposed in the Request, 94–95, 103–104, and 110–111.

Claims 6, 17, and 23 include the feature that personalized information is selected for display based upon the time said user logs on to the system.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

Ex. Ans. 12. The Examiner concluded that Beach's description of customizing information displayed based upon the date that the user logs on to the system is not the same as customizing information based upon the user's login time. Ex. Ans. 13.

Appellant Requester urges that the Examiner has erred in interpreting the word "time" in the claims too narrowly as time the consumer logs on. Req. App. Br. 7. According to the Appellant Requester, the Beach reference suggests that the user's login time can be used to select targeted advertisements or messages. *Id.* at 8. In support of this, Appellant Requester points to a description that if the user's login time occurs during a particular holiday, Beach explains that "a generic message is displayed to each user which includes a message regarding a Holiday Special Pumpkin Pies." *Id.*, citing Beach 10:46–49.

The Examiner has found that "<u>customizing information displayed based upon the *date* that the user logs on to the system is not the same as customizing information based upon the user's login *time*</u>." Ex. Ans. 13.

We reproduce the description in question below:

> FIG. 7A illustrates the initial screen of a portable terminal upon retrieval of the unit. As illustrated in FIG. 7A, a generic message is displayed to each user which includes a message regarding a Holiday Special: Pumpkin Pies. The item is underlined indicating that the selection may be activated to retrieve additional information. In this case, although not shown, the information retrieved would indicate the price and size of the pumpkin pie special, the location within the store where the pies are located and another link marked "Additional Specials."

Beach 10:46–55.

34

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

On balance, we find the evidence of record supports the conclusion of the Examiner. A display of a seasonal special (not necessarily tied to login, as it may be generic to each user) is not equatable to displaying advertisements based upon a user's login time. We therefore affirm the Examiner's decision not to reject the claims on this basis.

> B. The non-adoption of the rejections of claims 6, 17, and 23 as obvious over Beach in view of Ogasawara and Gerace.

Claims 6, 17, and 23 include the feature that personalized information is selected for display based upon the *"time said user logs on to"* the system. Ex. Ans. 13.

The Examiner concluded that "<u>customizing information displayed based upon the *date* that the user logs on to the system is not the same as customizing information based upon the user's login *time*.</u>" Ex. Ans. 14.

Appellant Requester urged initially that Beach's description of a user logging into the system on their birthday enabled an offer to the user of a free coffee and a chocolate cupcake. Request, pp.120, 129 and 136. Appellant Requester urges the Examiner erred because of a switch in the interpretation of the word "time" in the claims. Req. App. Br. 6.

The Examiner initially interpreted time as the current time of day. Non-Final Office Action mailed November 21, 2011, p. 33. The Examiner shifted to interpreting time as the time the user logs on. Action Closing Prosecution mailed June 4, 2012, 28. The Examiner then concluded the filtering would be different. *Id.*

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

Appellant Requester urges that this unduly narrow interpretation was error that rewarded the ambiguity in the Respondent Patent Owner's Specification. Req. App. Br. 9.

The broadest reasonable definition of time is generally contextually driven. "Time" standing alone can have almost infinite meanings — "since the dawn of time," "once upon a time," "there came a time," and "from time immemorial" all imply longer periods of time than an instant in time. A "time out" or "moment in time" would imply shorter, circumscribed time periods. The time a user logs in, in the context of tracking users, to us implies that particular moment in time. It is not error for the Examiner to have concluded that it excludes a day (or a season).

### C. The withdrawal of the rejections of claims 6 and 23 as obvious over Gupta 1 in view of Tso 2.

Claims 6 and 23, as discussed above, require the use of the time the user logs into the system as a basis for selecting among advertisements and services.

Appellant Requester urged initially that Gupta described that the system records the time said user logs on to and logs off of the system, and wherein said personalized information is also selected for display based upon the time said user logs on to the system. Request 60. More specifically, Gupta describes a user's profile information can include "the time spent on each web site." Gupta 1 ¶ 33. Further, "[t]he profile information may be utilized by the proxy to conduct targeted advertising." *Id.* ¶ 34.

36

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

The Examiner found that "customizing information displayed based upon the amount of time a user spent on a particular web site is not analogous to using the time the user logs in to the system as a basis for customization." Ex. Ans. 9.

Appellant Requester urges error in that this finding is contrary to the testimonial evidence in the First Hammad Declaration and the teachings of the Tso reference, which is the second reference in the proposed rejection. Further error is urged in that the ACP did not interpret the language in claim 6, specifically the "time said user logs on" in a manner consistent with the broadest reasonable interpretation. Req. App. Br. 13.

As regards the Hammad Declaration, we observe that the declarant has taken the position that the time on a website is nothing more than the difference between the time one logs on and the time one logs off. Hammad Decl. I ¶ 26.

While this is true, the conclusion misses the point of the targeted filtering of advertising. The *amount* of time one spends somewhere is different from the *point* in time one is present. If one spends several hours on a pet website, it may be presumed the person is interested in animals. If one arrives at a retail establishment at 6 am, it may be presumed that person could be interested in a caffeinated beverage. The mechanism for arriving at each determination is different, although the underlying data points may in fact overlap.

Accordingly, we decline to find error on the part of the Examiner.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

> D. The withdrawal of the rejection of claim 23 as anticipated by
> Tso.

Claim 23 was initially rejected by the Examiner as anticipated by Tso.
Request 86. The reasoning was that Tso discloses that the selecting step also
uses the time the consumer logs on to the terminal. Specifically, Tso was
initially found to describe "[w]hat resources are contained in the list of
updated resources is determined by server A 27 by identifying the last time
[the cellular phone] was in a domain served by server A 17 from the
Last_Time_In_Domain field of the RFC message, and then appending any
resources updated after that time to the list of updated resources. [The
cellular phone] has the option at this point of retrieving any of the resources
as desired." Request 86, citing Tso 18:56–64.

As the resources that are sent to the cellular phone were based on the
time that the user logged onto the system, it was determined that Tso
described temporal filtering.

The Examiner subsequently withdrew the rejection, determining that
"storing information on the last time the cell phone was in a specific domain
is not analogous to storing the time the user logs on to and off of the
system." Ex. Ans. 10. The Examiner also found that "customizing
information displayed based upon the last time the cell phone was in a
specific domain is not analogous to customizing information based upon the
time the user logs on to the system." Ex. Ans. 11.

Appellant Requester urges error in that to the extent the broadest
reasonable interpretation of claim 23 includes selecting personalized
information based on the current time of day obtained immediately after a

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

user's logon Tso plainly discloses this feature and thus anticipates claim 23.
Req. App. Br. 18. The factual basis for this argument is that Tso discloses a
system that "allows information providers to target
particular audiences for receiving information and advertisements." Tso
1:56–58. Moreover, it is urged that Tso teaches the personalized
information sent to the user "is dependent on various factors, including . . .
the time of day . . . ." Tso,1:47–52.

Respondent Patent Owner urges that Tso fails to describe "'wherein
said terminal has an identification code for determining an exact physical
location of said terminal'" based upon GPS accuracy. PO Resp. Br. 15
(emphasis omitted). Respondent Patent Owner also fails to describe "the
time said consumer logs on to said terminal." *Id.* (emphasis omitted.) This
is said to be so as the last time in domain field is not a log in time.

We observe that Tso generally describes filtering information
provided to a client. Tso, Abstract. That information is filtered by "various
factors, including: the location of the user; the time of day; and the
information contained in a user profile." Tso 1:48–50. When a user moves
around the country, the system recognizes its current domain and
reconfigures the information sent based upon location and the configuration
used the last time the user was in the domain. Tso 18:50–65.

This reconfiguration causes different filters to be applied. However,
the time of day described earlier in Tso is an additional filter to be used in
providing information, not a characterization of the filtering by the time of
the user logging into the system. We therefore find no error in the
Examiner's finding.

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

>       E. The withdrawal of the rejections of claims 6 and 17 as
>          anticipated by Gupta 2.

Claims 6 and 17 were initially rejected as anticipated by Gupta 2.
Request 142, 147. In sum, Gupta 2 was found to describe that the
personalized information is selected for display based upon the time the user
logs on to and logs off of the system, and specifically the time the user logs
on to the system. For example, Gupta 2 was found to describe a user logs on
to the system using a "card . . . containing a personal identification code, by
passing it through a card reader **20**, which identifies the shopper to the in-
house central computer **14**." Gupta 2 4:57–62. Gupta 2 was also found to
describe that "[t]he PPP [profile] passed to the shopping cart also includes . .
. time and length of shopping session." Gupta 2 9:32–35. Request 142 and
147.

Gupta 2's system was then found to "interact[] with the shopper PPP .
. . to display product alternatives and advertising which best suit the
shopper's buying patterns." Gupta 2 at 5:31–34. The Examiner initially
concluded that the user's log on times thus affected the system's display of
personalized information. Request 142 and 147.

The Examiner changed his position, later determining that Gupta 2
would not be understood by an ordinary artisan as qualifying as the claimed
"online service." The Examiner also determined that as claims 6, 17, and 23
include the feature that personalized information is selected for display
based upon the time said user logs on to the system, Gupta failed to describe
this feature. Specifically, the Examiner concluded that "there is no explicit
disclosure that <u>personalized information is selected for display based upon</u>

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

the time the user logs on to the system, as required by the claim language."
Ex. Ans. 15–16.

Appellant Requester challenges the withdrawal of the rejections as the rejections pertain to claims 6 and 17. Req. App. Br. 18. The Examiner is urged to have erred in his finding that Gupta did not describe the time of login. *Id.* at 21. This is said to be so because Gupta 2 expressly described using the "time and length of shopping session" in the PPP (user profile), and that the system "interacts with the shopper PPP . . . to display product alternatives and advertising which best suit the shopper's buying patterns." Req. App. Br. 21, citing Gupta 2 5:31–34.

We observe that Gupta 2 does contain a description of the time and duration of the shopping session as a possible contributor to the user profile which could be used to target information. Gupta 2 9:32–36. We agree with the Examiner's characterization that such could render the use of login time obvious, but it is not an express or inherent description as required for anticipation. Accordingly, we are unpersuaded by this final argument.

We affirm the Examiner's decision to withdraw this rejection.


DECISION

The Examiner's decision to reject claims 6, 17, 23–40, 42–58, and 60–69 is affirmed. The Examiner's decision not to adopt the rejection of claims 6, 17, and 23 over certain prior art is also affirmed.


No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a).

Appeal 2015-008002
Reexamination Control 95/001,763
Patent 6,847,969 B1

Requests for extensions of time in this *inter partes* reexamination proceeding are governed by 37 C.F.R. § 1.956. *See* 37 C.F.R. § 41.79.

<u>AFFIRMED</u>

PATENT OWNER:

Trevor Coddington, Esq.
SAN DIEGO IP LAW GROUP LLP
12526 High Bluff Drive
Suite 300
San Diego, CA 92130

THIRD-PARTY REQUESTER:

FISH & RICHARDSON P.C.
P.O. BOX 1022
Minneapolis, MN 55440-1022